UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MILLIE CABRERA POMALES,

                           Plaintiff,

        - against -

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                       Defendant.

22 Civ. 6009 (AEK)

**DECISION AND ORDER**

---

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Millie Cabrera Pomales brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of Defendant Acting Commissioner of Social

Security (the "Commissioner"), which denied her application for disability insurance benefits

("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").

ECF No. 1.  Currently pending before the Court are Plaintiff's motion, and the Commissioner's

cross-motion, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  ECF Nos. 13, 15.  For the reasons that follow, Plaintiff's motion (ECF No. 13) is

GRANTED, the Commissioner's cross-motion (ECF No. 15) is DENIED, and this matter is

remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. §

405(g).

---

[1] The parties consented to the jurisdiction of the undersigned for all purposes pursuant to
28 U.S.C. § 636(c) on August 26, 2022.  ECF No. 11.

# BACKGROUND

## I.    Procedural Background

On August 3, 2018 and August 20, 2018, Plaintiff filed applications for DIB and SSI, respectively, alleging December 17, 2017 as the onset date of her disability.  Administrative Record ("AR") 667-68, 806-21.[2]  In her initial filing, Plaintiff claimed she was disabled due to anxiety, depression, diabetes, panic attack, and foot pain.  AR 845.  After the Social Security Administration (the "SSA") denied her claim, AR 691-96, Plaintiff requested a hearing before an administrative law judge ("ALJ"), AR 697, 699-700.  An administrative hearing was held on August 22, 2019 before ALJ Dina R. Loewy, and Plaintiff appeared in person, unrepresented, and testified.  AR 607-20.  In a decision issued on January 16, 2020, ALJ Loewy found that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of December 17, 2017, through the date of the decision.  AR 669-86.  Plaintiff filed a request for review of that decision with the SSA's Appeals Council, AR 759-61, and on July 23, 2020, the Appeals Council vacated ALJ Loewy's decision and remanded the case for further administrative proceedings, AR 687-90.

On remand, Plaintiff appeared for a second hearing, which was conducted entirely by telephone, on September 2, 2020 before ALJ Raymond Prybylski.  AR 621-47.  Plaintiff was again unrepresented and testified.  Vocational expert ("VE") Lawrence Takki also appeared and testified.  In a decision issued on September 24, 2020, ALJ Prybylski likewise found Plaintiff not disabled within the meaning of the Act from the alleged onset date of December 17, 2017, through the date of the decision.  AR 167-85.  Plaintiff filed a request for review of this decision

---

[2] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 12.

with the Appeals Council, AR 801-02, and retained counsel, *see, e.g.*, AR 162-66.  On June 13, 2022, the Appeals Council denied Plaintiff's request for review, AR 1-7, making ALJ Prybylski's September 24, 2020 decision the final decision of the Commissioner.  The instant lawsuit, seeking judicial review of ALJ Prybylski's decision, was filed on July 14, 2022.  ECF No. 1.

## II.     Non-Medical, Medical, and Testimonial Evidence

Plaintiff has provided a summary of the non-medical, medical, and testimonial evidence contained in the administrative record, which has essentially been adopted by the Commissioner. *See* ECF No. 14 ("Pl.'s Mem.") at 2-10; ECF No. 16 ("Def.'s Mem.") at 2.  This summary, as well as the Commissioner's response, focus on Plaintiff's alleged mental impairments, as she "does not dispute the physical limitations found by the ALJ."  Pl.'s Mem. at 2 n.5.  Based on an independent and thorough examination of the record, the Court finds that Plaintiff's summary of the evidence concerning her mental impairments is largely comprehensive and accurate. Accordingly, the Court adopts the factual background as set forth by Plaintiff and discusses the evidence in the record in more detail to the extent necessary to determine the issues raised in this case.  *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

**APPLICABLE LEGAL PRINCIPLES**

## I.     Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when determining that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the

correct legal standards is grounds for reversal.'"  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 106 (quotation marks omitted).  The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted).  To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation marks omitted).  "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (quotation marks omitted) (emphasis in original).  "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'"  *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

## II.   Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of

4

substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).  "'[W]ork which exists in the national economy' means work which exists in

significant numbers either in the region where such individual lives or in several regions of the

country."  *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner

must follow in determining whether a particular claimant is disabled.  *See* 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).  The Commissioner first considers whether the claimant is

engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), (b),

416.920(a)(4)(i), (b).  If the claimant is engaged in substantial gainful activity, then the

Commissioner will find that the claimant is not disabled; if the claimant is not engaged in

substantial gainful activity, the Commissioner proceeds to the second step, at which the

Commissioner considers the medical severity of the claimant's impairments.  20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is "any impairment or combination of

impairments which significantly limits [the claimant's] physical or mental ability to do basic

work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant suffers from any severe

impairment, the Commissioner at step three must decide if the impairment meets or equals a

listed impairment; listed impairments are presumed severe enough to render an individual

disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the

SSA regulations.  20 C.F.R §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step

three, the Commissioner must then determine the claimant's residual functional capacity

("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's RFC represents "the most [he or

she] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

After determining the claimant's RFC, the Commissioner proceeds to the fourth step to determine whether the claimant can perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e)-(f), 416.920(a)(4)(iv), (e)-(f).  If it is found that the claimant cannot perform his or her past relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can adjust to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).  To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing.  20 C.F.R. §§ 404.1560(c), 416.960(c).

The claimant bears the burden of proof on the first four steps of this analysis.  *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998).  If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of performing other work.  *DeChirico*, 134 F.3d at 1180.

## DISCUSSION

Plaintiff seeks to reverse the Commissioner's decision and have the matter remanded to the SSA for further administrative proceedings.  She contends that (i) the ALJ erred in failing to fully develop the record; (ii) remand is required to consider the new evidence that Plaintiff submitted to the Appeals Council; and (iii) the ALJ failed to properly evaluate Plaintiff's subjective statements.  *See* Pl.'s Mem. at 10-22; ECF No. 17 ("Reply Mem.").  The Commissioner seeks to have her final decision affirmed; she maintains that the ALJ's decision is

supported by substantial evidence and disputes all of Plaintiff's assertions of error.  Def.'s Mem. at 10-20.

As discussed below, the Court finds that the ALJ failed to fully develop the record as required; therefore, Plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

## I.      The ALJ's Decision

ALJ Prybylski applied the five-step sequential analysis described above and issued a decision finding that Plaintiff was not disabled from the alleged onset date of December 17, 2017, through the date of the decision, September 24, 2020.  AR 167-85.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2017.  AR 173. Second, the ALJ determined that Plaintiff had the severe impairments of obesity, diabetes with neuropathy and nephropathy, depressive disorder, anxiety disorder, palmar fasciitis, and carpal tunnel syndrome.  *Id.*[3]  Third, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 173-74.

According to the ALJ, Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] with the exceptions that

---

[3] The ALJ noted that Plaintiff also had the nonsevere impairment of retinopathy.  AR 173.  Plaintiff has not contested this finding.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

> [she] can occasionally push, pull, crouch, handle, finger, and feel.  She can
> never climb ladders, ropes, or scaffolds.  [Plaintiff] is limited to simple
> tasks and can tolerate few, if any, workplace changes.  [Plaintiff] is
> expected to be off task 5% of the workday.

AR 175.

ALJ Prybylski determined Plaintiff's RFC by applying the two-step framework described

in 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p.  *Id.*[5]  He concluded that although

Plaintiff's medially determinable impairments "could reasonably be expected to cause the

alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the

record . . . ."  *Id.*  The ALJ reviewed and summarized the medical evidence in the record,

including various medical opinions.  AR 175-78.  Based on this examination of the record, the

ALJ concluded that

> [m]entally, the combined effects of [Plaintiff's] impairments support the
> finding that she is limited to simple tasks and few if any workplace
> changes, and that she would be off task 5% of the workday.  This is
> supported by her reports of difficulty sleeping and issues with memory,
> attention, and concentration at her consultative examination.  (4F/3).
> However, as previously stated, she had minimal treatment consisting
> primarily of medication management through her primary care provider,
> and she declined referrals for psychiatric care.  (E.g. 12F/6).  Although
> [Plaintiff] reports difficulty going out and being around others, her exams
> describe her as cooperative with good eye contact and normal speech.  Her

---

[5] The ALJ specified that the first step in this process is to determine "whether there is an
underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that
can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could
reasonably be expected to produce the claimant's pain or other symptoms."  AR 175.  The
second step in the process, "once an underlying physical or mental impairment(s) that could
reasonably be expected to produce the claimant's pain or other symptoms has been shown," is
for the ALJ to "evaluate the intensity, persistence, and limiting effects of the claimant's
symptoms to determine the extent to which they limit the claimant's work-related activities."  *Id.*
"[W]henever statements about the intensity, persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider
other evidence in the record to determine if the claimant's symptoms limit the ability to do work-
related activities."  *Id.*

> primary care provider describes her as alert and oriented without mention
> of other abnormal objective findings.  At her February 2020
> neuromuscular consult, she was full[y] oriented with intact recent and
> remote memory.  She had normal concentration and attention and a normal
> fund of knowledge.  No other abnormalities were noted.  (E.g. 4F/2; 8F/9,
> 2; 16F/30).  These factors show that no greater limitations are warranted.

AR 178.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.  *Id.*

At the fifth step, the ALJ noted that Plaintiff, who was 35 years old on her alleged disability onset date, was a "younger individual"; that Plaintiff had a limited education; and that transferability of job skills was not an issue because Plaintiff had no past relevant work.  *Id.*  The ALJ explained that if Plaintiff "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.17." AR 179.  But the ALJ concluded that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."  *Id.*  Thus, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]."  *Id.*  The VE testified that Plaintiff could perform the requirements of unskilled, light jobs such as (1) usher (13,000 jobs nationally); (2) greeter (1,700 jobs nationally); and (3) furniture rental consultant (49,000 jobs nationally).  *Id.*; *see* AR 642-43.  Citing SSR 00-4p, the ALJ determined that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles."  AR 179.  Relying upon the VE's testimony, the ALJ found that, "considering [Plaintiff's] age, education, work experience, and [RFC]," Plaintiff could adjust to other work that existed in significant numbers in the national economy.  *Id.*  ALJ Prybylski therefore concluded that

Plaintiff was not disabled from the alleged onset date, December 17, 2017, through the date of the decision, September 24, 2020.  *Id.*

## II.        The ALJ Failed to Develop the Record

Plaintiff contends that the ALJ erred because he failed to fully develop the record when he had a heightened duty to do so given Plaintiff's *pro se* status at the time of the hearing and continuing through the date the ALJ issued his decision.  Pl.'s Mem. at 10-15.  More specifically, Plaintiff maintains that ALJ Prybylski erred in failing to obtain medical opinions from Plaintiff's treating sources regarding her mental limitations.  *Id.* at 10-14.  The Commissioner counters that the ALJ sufficiently developed the record.  Def.'s Mem. at 10-14.

Upon retaining counsel following the issuance of the ALJ's decision, Plaintiff was able to obtain and submit new evidence to the Appeals Council, including mental health treatment records and a treating source opinion from Nurse Practitioner Shamara Alterno.  *See* AR 10-14, 15-47, 48-60, 67-124.[6]  It is unclear to the Court whether this evidence constitutes all of Plaintiff's mental health treatment records, or whether other records exist that have yet to be obtained.  It is also unclear whether there are other treating sources who would be able to provide an opinion regarding Plaintiff's mental impairments.  What is clear, however, is that ALJ Prybylski did not have any of Plaintiff's mental health treatment records, or any treating source opinions, before him at any time prior to September 24, 2020, when he issued his decision.  Importantly, even where a formerly *pro se* plaintiff has retained counsel and, through counsel, provided additional evidence to the Appeals Council that the ALJ had not obtained prior to

---

[6] While some of these records are duplicates and some cover treatment that was rendered after the relevant time period, *i.e.*, after the ALJ's September 24, 2020 decision, some of the records cover treatment that was rendered before the date of the decision.  .Appropriately, in Plaintiff's recitation in her brief of the relevant medical evidence, she cites only to evidence from or related to the period prior to September 24, 2020.  *See* Pl.'s Mem. at 2-9.

issuing his or her decision, the submission to the Appeals Council does not render moot the question of whether the ALJ properly developed the record. *See Cameron v. Comm'r of Soc. Sec.*, 537 F. Supp. 3d 378, 381 n.3 (E.D.N.Y. 2021) ("a new submission to the Appeals Council is independent of any obligation on the part of the ALJ to obtain more evidence").

"Before determining whether the Commissioner's conclusions are supported by substantial evidence," a court "must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). Because "Social Security proceedings are inquisitorial rather than adversarial," an ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). This duty, which exists regardless of whether an individual is represented by counsel, includes the responsibility "to develop a complete medical record." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512). When a claimant is proceeding *pro se*, the ALJ's duty to develop the record is "heightened." *Moran*, 569 F.3d at 113. The ALJ's duty to develop the record is also heightened "when a claimant asserts a mental impairment." *Angelica P. v. Comm'r of Soc. Sec.*, No. 21-cv-9529 (GRJ), 2023 WL 2366913, at *4 (S.D.N.Y. Mar. 6, 2023) (quotation marks omitted). "Underpinning the heightening of the ALJ's duty is a recognition that the opinions of treating providers are particularly probative in claims involving mental health." *Id.* (citing *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018) (summary order)). "Although the 'treating physician rule' no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important 'support' for a medical opinion under the new medical opinion review standard." *Id.*; *see also Skartados v. Comm'r of Soc. Sec.*, No. 20-cv-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y.

Feb. 10, 2022) (explaining that an ALJ's obligation to develop the record by trying to obtain opinions from the claimant's treating sources "continues to exist even in cases involving claims filed after March 27, 2017, to which 'treating physician rule' does not apply"). "Whether the ALJ has met his [or her] duty to develop the record is a threshold question." *Angelica P.*, 2023 WL 2366913, at *6. "Remand is appropriate where this duty is not discharged." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 577 (S.D.N.Y. 2022); *see Moran*, 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

Pursuant to SSA regulations, the ALJ has an obligation to make "every reasonable effort" to obtain all medical evidence necessary from a claimant's treating health care providers to properly make a disability determination. 20 C.F.R §§ 404.1512(b)(1)(i), 416.912(b)(1)(i); *Jackson*, 588 F. Supp. 3d at 583. To make a "reasonable effort," an ALJ must "make an initial request for evidence from [a claimant's] medical source or entity that maintains [a claimant's] medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ must] make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. §§ 404.1512(b)(1)(i), 416.912(b)(1)(i); *Jackson*, 588 F. Supp. 3d at 584. That obligation extends to both objective and opinion evidence. *See Jackson*, 588 F. Supp. 3d at 583-84.

"Where a claimant is unrepresented, compliance with the minimum requirements of the regulations is not always sufficient to satisfy the ALJ's heightened duty to develop the record." *Jenkins v. Kijakazi*, No. 21-cv-3162 (SN), 2022 WL 4133283, at *4 (S.D.N.Y. Sept. 12, 2022) (quotation marks omitted). "Thus, with *pro se* claimants, 'reasonable efforts' to develop the record include more than merely requesting reports from the treating physicians. It includes

issuing and enforcing subpoenas requiring the production of evidence, as authorized by 42

U.S.C. § 405(d)[7], and advising the plaintiff of the importance of the evidence." *Id.* (quotation

marks omitted). "Further, the ALJ must enter these attempts at evidentiary development into the

record." *Id.* (quotation marks omitted).

Here, at the September 2, 2020 hearing before ALJ Prybylski, Plaintiff testified that she

had been going to "All Meds" for psychiatric treatment for about a year. AR 638; *see also* AR

615-16 (at her first hearing in August 2019, Plaintiff testified that she received medication for

anxiety from Eric Gayle, her primary care doctor at Institute for Family Health, and from

Vanessa Alexandre, a nurse Plaintiff had been seeing for therapy). There is evidence in the

record that the SSA made the required two attempts to obtain medical records from the

physicians who treated Plaintiff in connection with her mental impairments. *See* AR 1323

(second request for medical records from Stevenson Family Health Center[8] dated 8/24/2020,

noting that it was a follow-up to a request made on 8/10/2020) & 1324 (second request for

medical records from All Med Medical Group dated 8/24/2020, noting that it was a follow-up to

---

[7] SSA regulations also provide for the issuance of subpoenas. *See* 20 C.F.R. §§
404.950(d)(1), 416.1450(d)(1) ("When it is reasonably necessary for the full presentation of a
case, an administrative law judge . . . may, on his or her own initiative or at the request of a
party, issue subpoenas . . . for the production of books, records, correspondence, papers, or other
documents that are material to an issue at the hearing."). "The Second Circuit has explained that
the plain language of this [regulatory] section clearly places the decision to issue a subpoena
within the sound discretion of the ALJ." *Outman v. Comm'r of Soc. Sec.*, No. 16-cv-988 (MAT),
2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018) (cleaned up). "However, the ALJ's
discretion is not unlimited, and he [or she] cannot ignore essential available medical evidence."
*Id.* (quotation marks omitted). "A failure to subpoena medical records which were reasonably
necessary is harmful error." *Id.* (cleaned up). As further explained *infra*, the medical records
from Plaintiff's mental health care providers were reasonably necessary to fill the obvious gap in
the record here, and therefore the ALJ's failure to subpoena these records was harmful error.

[8] Stevenson Family Health Center appears to be affiliated with the Institute for Family
Health. *See, e.g.*, AR 1172-73 (Stevenson Family Health Center is listed as an Institute for
Family Health "extended-hours" center).

a request made on 8/10/2020).  But ALJ Prybylski never issued any subpoenas, nor did he advise

Plaintiff of the importance of obtaining these medical records herself.[9]  Moreover, there is no

specific indication in the record as to whether the ALJ sought treating source opinions from

Plaintiff's mental health care providers in addition to their treatment records.  *See* AR 1323,

1324 (second request letters stating only that the SSA "need[s] evidence from [the provider] to

evaluate the claim").  Notably, the Commissioner does not argue that the ALJ requested such

opinions.

At the beginning of the hearing, ALJ Prybylski asked Plaintiff whether she had "any

objection" to the evidence that the SSA already had about her in her file, and she responded that

she did not.  *See* AR 626-27.  From this brief colloquy, however, the Court cannot conclude

either that Plaintiff, appearing *pro se*, understood that both treatment records and treating source

opinions from her mental health care providers were missing from the administrative record, or

that Plaintiff's lack of objection meant that she was satisfied with the evidence in the record,

even though it was incomplete.

---

[9] A document in the administrative record reflects a communication between Plaintiff and
the SSA hearing office on August 5, 2020, in which Plaintiff was informed of her "responsibility
to obtain information, including updated medical evidence, and provide it to the hearing office as
soon as possible, but at least 5 business days prior to the scheduled hearing date."  AR 953.  The
document also notes that Plaintiff was asked about any updated medical sources and that she
reported that her updated medical sources, from "2/1/2020 to Present," were Stevenson Family
Health Center, All Med Medical Group, and Montefiore Medical Center.  *Id.*  There is also
documentation of a communication between Plaintiff and the SSA hearing office on August 24,
2020, which notes, with respect to "[o]utstanding records":  "Sees a psychiatrist now so we need
to ask for records" and then lists the following treatment providers from whom records were to
be obtained—"Aristide Beaubal, M.D. – all records"; "Stevenson Family Health Center –
records since January 2020"; and "All Med Medical Group – records since January 2020."  AR
959.  Nonetheless, as explained herein, the ALJ did not inform Plaintiff at the hearing of either
her failure to provide additional records from these treating sources or the SSA's inability to
obtain records from these treating sources.

ALJ Prybylski noted in his decision that Plaintiff had "statements from her psychiatrist dated February and March 2020 saying that she is receiving psychiatry treatment for generalized anxiety disorder, major depressive disorder with recurrent severe psychotic symptoms, and insomnia," AR 177, but the ALJ added that "there are no accompanying examination records despite two unsuccessful attempts to receive such records and there is little objective evidence of recurrent severe psychotic symptoms," *id.*  The ALJ cited "Exhibit 18F" for this assertion—*i.e.*, the second request for medical records from All Med Medical Group, AR 1324—but Exhibit 18F was *not* among the exhibits in the file that was shown to Plaintiff prior to the hearing.  *See* AR 627 ("So I'm admitting for the record the following exhibits.  We have 1A through 6A.  We have 1B through 15B.  We have 1D through 14D.  We have 1E through 34E.  We have 1F through 16F.").  Again, it is not clear that Plaintiff had any reason to know at the time of the hearing that her mental health treatment records were not before the ALJ.

Furthermore, in explaining how he determined Plaintiff's RFC, ALJ Prybylski noted that "she had minimal treatment consisting primarily of medication management through her primary care provider, and she declined referrals for psychiatric care." AR 178 (citing AR 1205, an emergency room psychiatry consultation from December 18, 2017).  This cursory dismissal of Plaintiff's mental health treatment focuses on a particular moment in time, and does not provide a complete picture.  Indeed, the records that the ALJ did not obtain—but which were provided by Plaintiff's counsel to the Appeals Council, *see* AR 15-47, 48-60, 67-124—demonstrate that Plaintiff did, in fact, receive psychiatric treatment beyond just medication management during time periods relevant to the ALJ's disability determination.  As such, the ALJ's RFC determination did not fully consider the scope of the mental health treatment that Plaintiff received during the relevant time period, and in fact was predicated in part on a mistaken

understanding of Plaintiff's medical history that resulted from the failure to obtain the necessary records.

The Commissioner cites cases which hold that when an ALJ is unable to obtain a treating physician's records, the ALJ fulfills his or her duty to develop the record by ordering a consultative examination.  *See, e.g.*, *Daniels v. Colvin*, No. 14-cv-2354 (SN), 2015 WL 1000112, at *15 (S.D.N.Y. Mar. 5, 2015); *Sanchez v. Comm'r of Soc. Sec.*, No. 15-cv-4914 (PGG) (JCF), 2016 WL 8469779, at *8 (S.D.N.Y. Aug. 2, 2016), *adopted by* 2017 WL 979056 (S.D.N.Y. Mar. 13, 2017).  But the value and significance of the consultative examination performed here by Dr. Laura Kerenyi on October 11, 2018, *see* AR 1149-53, is diminished—that examination took place long before either the mental health care at issue was provided, and long before the ALJ engaged in his failed, and decidedly insufficient, attempts to obtain records from Plaintiff's mental health care providers.

While an ALJ's failure to develop the record is a basis for remand, a remand is not automatically warranted in the absence of a medical source statement from a treating physician—even in cases decided pursuant to the pre-March 27, 2017 treating physician rule—if "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (summary order).  Rather, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation marks omitted); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination

16

as to disability.") (cleaned up); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (ALJ had no "further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians" where ALJ "had all of the treatment notes from [the plaintiff's] treating physicians" and where ALJ's RFC assessment was supported by consultative examiner's opinion).

But the lack of mental health treatment records here, in a case involving a *pro se* litigant who was not advised of the importance of providing such records and opinions from treating sources, is an obvious gap in the administrative record. And indeed, even in more recent cases where the "treating physician rule" did not apply, various courts have determined that an ALJ's failure to obtain opinions from treating sources is alone sufficient to warrant a remand. *See Angelica P.*, 2023 WL 2366913, at *5; *Skartados*, 2022 WL 409701, at *5 ("The record does not reveal any attempt by the ALJ to obtain a medical opinion from [the treating psychiatrist], and this alone is a sufficient basis to remand."). In *Angelica P.*—unlike here—the ALJ had obtained the plaintiff's psychiatric treatment notes, but the court rejected the Commissioner's argument that "the record was sufficient to sustain the ALJ's RFC determination, notwithstanding the lack of any opinions from treating providers" because (1) "treating provider opinions have particular probative value where . . . the claimant undoubtedly has significant limitations arising from her mental impairments"; and (2) "the medical opinion evidence in the record was conflicting, thus making it all the more important that the ALJ seek the input of treating providers." 2023 WL 2366913, at *5. Another key factor contributing to the court's determination in *Angelica P.* was the fact that the ALJ "did not find any of the medical opinions of record fully persuasive." *Id.* at *6. The need to obtain and consider treating source information is even more pronounced here, given that ALJ Prybylski did not find any of the medical opinions of record persuasive *at all*.

17

*See* AR 177 ("The opinions of the state . . . psychological consultants are not persuasive . . . . The psychological consultative examiner's opinion that the claimant has only mild limitations is not persuasive.").

In sum, in arriving at his decision, ALJ Prybylski lacked medical source opinions from all of Plaintiff's treating mental health care providers and also lacked "a complete medical history" with regard to Plaintiff's mental impairments.  The absence of such information—particularly when taken together, and especially in a case involving a *pro se* litigant—represents an "obvious gap in the record," and ALJ Prybylski was obligated to develop the record further before rejecting Plaintiff's claims for benefits.  *Rosa*, 168 F.3d at 79 n.5.  Accordingly, this matter must be remanded for further administrative proceedings so that the ALJ can decide Plaintiff's claims on a fully developed record, including both the treatment records from Plaintiff's mental health care providers and one or more treating source opinions regarding Plaintiff's mental impairments.[10]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (ECF No. 13) is GRANTED, the Commissioner's cross-motion (ECF No. 15) is DENIED, and this matter is remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

---

[10] Because the Court remands the matter for further administrative proceedings on this basis, it declines to address the other arguments made by the parties in their motion papers.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

Dated: September 26, 2023
      White Plains, New York

**SO ORDERED**.

_____
ANDREW E. KRAUSE
United States Magistrate Judge